**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Stephen Miner

      v.                                Civil No. 06-cv-242-JD

Glenn Libby, Superintendent,
Grafton County Department of
Corrections, et al.

**REPORT AND RECOMMENDATION**

Proceeding pro se, Stephen Miner ("Miner" or "plaintiff") has filed this action pursuant to 42 U.S.C. § 1983 and Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132, et seq., against employees of the Grafton County Department of Corrections ("GCDC") and the Grafton County Commissioners.[1]  The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  See 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated below, I direct, in an Order issued simultaneously with this Report and Recommendation, that the ADA, Equal Protection, conditions of

---

[1]Miner has named the following defendants to this action: GCDC Superintendent Glenn Libby ("Libby"), GCDC Corporal Diane Arsenault ("Arsenault"), GCDC Officer Jason Reed ("Reed"), GCDC Officer Michael Dunn ("Dunn"), GCDC Captain Roland Lafond ("Lafond"), and the Grafton County Commissioners, who are not individually identified.

confinement, deficient disciplinary hearing due process, and unreasonable strip search claims proceed and that defendants Libby, Lafond, Reed, and Dunn be served with this action.  I recommend that the claim alleging retaliatory punishment as well as defendants Arsenault and the Grafton County Commissioners be dismissed from this action.

<u>Standard of Review</u>

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review and to prepare a report and recommendation determining whether the complaint or any portion thereof should be dismissed because:

> (i) the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief under 28 U.S.C. § 1915A(b); or
>
> (ii) it fails to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally.  <u>See</u> <u>Ayala Serrano v. Lebron Gonzales</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) to construe pro se pleadings liberally in favor of the pro se party).  "The policy

behind affording pro se plaintiffs liberal interpretation is that
if they present sufficient facts, the court may intuit the
correct cause of action, even if it was imperfectly pled." Ahmed
v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied,
Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions
made by the plaintiff and inferences reasonably drawn therefrom
must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3
(1st Cir. 1996) (stating the "failure to state a claim" standard
of review and explaining that all "well-pleaded factual
averments," not bald assertions, must be accepted as true). This
review ensures that pro se pleadings are given fair and
meaningful consideration. See Eveland v. Dir. of C.I.A., 843
F.2d 46, 49 (1st Cir. 1988).

### Background[3]

Stephen Miner filed this action on July 3, 2006, while he
was an inmate in the custody of the GCDC.[4]  Miner suffers from

---

[3]The facts offered by Miner in support of the claims in this
action were set out in a narrative that was not entirely
cohesive.  Accordingly, I have construed the allegations in the
complaint liberally to ensure that all of the relevant facts
presented by Miner were considered in this review.

[4]Miner has been transferred to the New Hampshire State
Prison since the filing of his complaint.

significant physical disabilities which require that he make use of a walking cane and an orthopedic shoe. Specifically, Miner states that he does not have a right hip joint, and that his right leg is four inches shorter than his left leg. Miner asserts that he requires a handicapped-equipped living space in order to fully accommodate his disability.

Miner alleges that on June 1, 2006, he was removed from general population at the GCDC and placed in a small cell in "administrative segregation." This move was made at the direction of defendant Lafond. Miner remained in administrative segregation for five days, during which he was held in lockup continuously, without any out-of-cell time, and was denied soap, toothpaste, a toothbrush, a comb or a shower. On June 4, 2006, Miner states that he was moved to the punitive housing area of the GCDC for no reason. The following day, Lafond took Miner's cane. Miner was advised that he would only be released from twenty-four hour a day lockup if he gave up his cane, although he needs it to walk. Miner states that due to this pressure, he did relinquish his cane. Miner states that approximately one week later, his orthopedic shoe was also disallowed.

On June 5, 2006, Miner asked defendant Dunn if he could take a shower and was told his ability to shower would depend on his attitude.  Dunn did not allow Miner to shower or provide Miner with any hygiene items.  On that date, Miner was brought to Lafond's office for an interview.  Although Lafond asserted his belief that Miner was in a handicapped cell, Miner states that in fact he was not in a handicapped-equipped cell and that GCDC, due to the age of the incarcerative facility, did not provide Miner with adequate accommodations for his disability.  As a result, Miner requested transfer to the better-equipped New Hampshire State Prison.  Lafond accused Miner of being disrespectful in Lafond's office, and imposed segregation as punishment on that basis without a further hearing.

While he was in segregation, a nurse came to Miner's cell to dispense Miner's medication.  Miner advised the corrections officer present, defendant Reed, that he was unable to get himself to the cell door because his walking cane and orthopedic shoe had been taken away from him.  Reed advised Miner that he would have to crawl along the floor to the cell door in order to receive his medication.  Miner did so and suffered extreme pain as a result.

On June 15, 2006, Miner was given a disciplinary hearing in Lafond's office for various rule infractions that Miner was alleged to have committed on June 13, 2006.[5]  Lafond advised Miner that in determining Miner's guilt, Lafond would consider a prior incident where Miner threw urine at defendant Arsenault. Miner claims that the urine-throwing incident never happened, and that he was never given a disciplinary write-up for a urine-throwing incident where he would have the opportunity to contest the allegations.  Miner alleges that as a result he was punished for incidents on June 13 based on false accusations without the opportunity to defend himself.  Miner also alleges that at the June 15 disciplinary hearing, Lafond denied him the opportunity to cross-examine Arsenault, who was the complaining officer in the disciplinary matter.  Miner was also prohibited from calling two of his own witnesses.  At the hearing, Miner complained that Lafond's role as sole judicial officer presiding over the disciplinary matter denied Miner an impartial tribunal because of Lafond's personal relationship with Arsenault.  On June 16, 2006, Miner received the written results for his June 15 disciplinary

---

[5]The complaint is silent as to what occurred on June 13 to provoke disciplinary processes or what disciplinary charges were brought on June 15.

hearing.  He was found guilty and sanctioned with two consecutive
seven day terms in lock-up.

At the time he filed his complaint, Miner was still being
held in the punitive segregation housing unit of the GCDC.  Miner
alleges that he was in punitive segregation in retaliation for an
earlier lawsuit that he had brought against a former employer of
defendant Libby.  Miner's retaliation allegation is based on the
fact that Libby told Miner that he remembered Miner's prior
lawsuit.  Miner asserts that Libby's knowledge of Miner's prior
suit caused Libby to retaliate against Miner, using cell
conditions that were not amenable to Miner's physical disability
as a vehicle to accomplish the retaliation.

Miner claims that at 8:30 p.m. on June 15, 2006, he was
subjected to a strip search at or in his cell.  Miner claims that
nine hours later, on June 16, 2006 at 5:30 a.m., Reed came to
Miner's cell door to conduct another full body strip search.
Miner asserts that he had not been out of his cell during the
nine hours between searches and had no opportunity to obtain
contraband during that time.  Miner claims, therevfore, that the
second strip search was unreasonable.  Miner also objects to the
fact that Reed asked him to step out of the cell for the second

search, but denied Miner the use of his orthopedic shoe, and
instead forced him to crawl to the door to be searched.

Miner alleges that he attempted to resolve these issues by
discussing them with officials at the GCDC.  Specifically, Miner
states that prior to initiating this action, he met on three
occasions with Libby and also on at least two occasions with
Lafond, but did not receive any satisfactory response from either
official.

Discussion[6]

1.  <u>ADA Claim</u>

Title II of the ADA provides that "no qualified individual
with a disability shall, by reason of such disability, be
excluded from participation in or be denied the benefits of the
services, programs, or activities of a public entity, or be
subjected to discrimination by any such entity."  42 U.S.C. §
12132.

> Pursuant to the plain language of Title II, a plaintiff
> must establish: (1) that he is a qualified individual
> with a disability; (2) that he was either excluded from
> participation in or denied the benefits of some public

---

[6]The claims as identified herein will be considered for all
purposes to be the claims raised in the complaint.  If Miner
disagrees with this identification of the claims, he must do so
by proper objection to this Report and Recommendation or by
properly moving to amend his complaint.

      entity's services, programs, or activities or was
      otherwise discriminated against; and (3) that such
      exclusion, denial of benefits, or discrimination was by
      reason of the plaintiff's disability.

Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000).

Title II of the ADA applies to inmates in correctional

facilities.  See Pa. Dep't of Corrs. v. Yeskey, 524 U.S. 206,

209–10 (1998).  "[P]risons provide inmates with many recreational

'activities,' medical 'services,' and educational and vocational

'programs,' all of which at least theoretically 'benefit' the

prisoners (and any of which disabled prisoners could be 'excluded

from participation in.')"  Id. at 210.

    Miner alleges that he has a disabling physical condition,

and that being housed in cells that are not handicapped–equipped,

being denied the use of his cane and orthopedic shoe, and being

denied adequate accommodation for his disability has resulted in

the denial of benefits, services or programs to him to which he

is entitled under the ADA.  While the complaint is somewhat scant

as to what specific benefits, services, or programs were denied

to Miner, I find that his allegations that he was not given an

adequately equipped cell or the equipment necessary to even walk

to get his medication or to accommodate officers seeking to

search his cell, and that he was held in lockup until he agreed

to relinquish his cane, give rise to a cognizable claim under the ADA.  In an Order issued simultaneously with this Report and Recommendation, I will direct that the claim of discrimination under the ADA be served on Lafond, Dunn, and Reed as well as Libby, who is responsible for assuring that the GCDC incarcerative facility is adequately equipped to meet the needs of its inmates.

2.   Section 1983 Claims

    A.   Equal Protection Claim

State officials "are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational. . . . If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."  Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 367–68 (2001);  Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 86 (2000).  As the ADA is such a positive law, any protection against discrimination that is based on anything aside from the irrational relationship between the challenged actions of the defendants and a rational penological objective arises under the statute, rather than under the Equal Protection clause.

To the extent, however, that Miner alleges that the impositions placed upon him as a result of his disability were not rationally related to a proper penological objective, those claims might be viable under the Equal Protection clause.

Here, Miner alleges that he was denied a cane and orthopedic shoe that he needed to walk, and was made to crawl to get prescribed medication or to comply with an officer's order to leave his cell.  I find that this allegation can be construed to describe irrational actions on the part of defendants Lafond, Reed, Libby and Dunn, and I will direct that the Equal Protection claim be served upon them in the Order issued simultaneously with this Report and Recommendation.

B.   Miner's Incarcerative Status

It is unclear from his complaint whether Miner was a pretrial detainee or sentenced inmate when the challenged events occurred.  Because he was held in a county correctional facility and then transferred to the State Prison, however, I will assume for purposes of preliminary review that Miner was a pretrial detainee at GCDC during the period complained of here.

> A pretrial detainee has a Fourteenth Amendment
> right to be free from punishment prior to
> conviction.  While a pretrial detainee may be
> disciplined for a specific institutional infraction

11

> committed during the period of his detention, the discipline imposed must be roughly proportionate to the gravity of the infraction.  An arbitrary, or disproportionate sanction, or one that furthers no legitimate penological objective, constitutes punishment (and, thus, is proscribed by the Fourteenth Amendment).

Surprenant v. Rivas, 424 F.3d 5, 13 (1st Cir. 2005) (citing Bell v. Wolfish, 441 U.S. 520, 535, 538-9 (1979) and Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 318 (1st Cir. 1995)). Accordingly, I find that Miner's complaints about prison life raised under § 1983 arise under the Fourteenth Amendment.

        C.    Conditions of Confinement

    "A pretrial detainee's claim that he has been subjected to unconstitutional conditions of confinement implicates Fourteenth Amendment liberty interests. . . . In order to establish a constitutional violation, a plaintiff's claim must meet both objective and subjective criteria."   Surprenant, 424 F.3d at 18 (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The plaintiff must establish that the conditions of his confinement deny him the minimal necessities required for civilized living from an objective standpoint, and then must show that the defendant was deliberately indifferent to the plaintiff's health

or safety in creating or allowing the challenged conditions.
Surprenant, 424 F.3d at 18–19 (citations omitted).

Here, Miner alleges that he was denied all access to hygiene
products and showers for a period of five days while he was
placed in administrative segregation.  Further, he alleges that
he was intentionally moved to this unit by Lafond.  Miner further
states that he specifically requested a shower and hygiene items
from Dunn, but was denied due to his "attitude."  Miner alleges
that he requested that Lafond place him in a handicapped–equipped
cell.  Miner's complaint also asserts that Lafond accused Miner
of being disrespectful during an interview, and that although
Miner was never given the opportunity to defend that accusation,
Lafond continued Miner's placement in administrative segregation
as a punitive measure.

It may ultimately be determined that five days is not long
enough, under the circumstances of this case, to constitute a
constitutional deprivation, or that Miner's alleged "attitude"
issues merited the actions taken by the defendants.  At this
stage of the proceedings, however, I cannot definitively
determine that the deprivation of hygiene items and showers was
not punitive in nature, or that the deprivation was effected in

response to a specific infraction that occurred at the GCDC.
Further, based on the facts alleged, it is possible that Miner
could demonstrate that the defendants to this claim possessed the
necessary deliberate indifference to Miner's health and safety to
permit this claim to go forward.  Accordingly, I will direct that
this claim be served on defendants Lafond and Dunn in an Order
issued simultaneously with this Report and Recommendation.

       D.   <u>Deficiency in Disciplinary Hearing</u>

     Miner alleges that he was denied due process of law on June
5 when Lafond denied him a hearing prior to punishing him, and in
the disciplinary proceedings held before Lafond on June 15, 2006
when he was judged and punished based on uncharged conduct,
without the benefit of cross-examination, without access to his
own witnesses, and without an impartial decisionmaker.
Ordinarily, when a prisoner is subjected to disciplinary
sanction, he must prove that the sanction itself was so atypical
of the normal incidents of prison life, and imposed such a
hardship, that he was entitled to due process in order for the
sanction to be constitutionally effected.  <u>Sandin v. Conner</u>, 515
U.S. 472, 483-84 (1995).  <u>Sandin</u>, however, only applies to
convicted inmates who might expect a certain amount of punishment

14

as typical of the normal incidents of prison life.  Pretrial
detainees, to the contrary, have a constitutionally-protected
liberty interest in avoiding any punishment.  <u>Surprenant</u>, 424
F.3d at 17.  In <u>Wolff v. McDonnell</u>, the Supreme Court identified
the due process requirements for a disciplinary hearing in a
prison.  418 U.S. 539, 564 (1974).  Those requirements include
written notice of the charges at least twenty-four hours in
advance of the hearing, the ability to call witnesses and present
evidence, and that the hearing be presided over by an impartial
decisionmaker.  <u>Id.</u> at 566, 570-71; <u>Surprenant</u>, 424 F.3d at 16.

Because Miner was at the GCDC as a pretrial detainee, he was
entitled to the protections of the due process clause if the
disciplinary sanction against him was at all punitive.  Miner
alleges that he was sanctioned with fourteen days in punitive
lockup.  Accordingly, I find that Miner was entitled to due
process protections as outlined by <u>Wolff</u> at his disciplinary
hearing.  Miner has alleged that he was denied the opportunity to
confront the evidence against him, denied the ability to call
witnesses in his favor, and denied an impartial decisionmaker as
Lafond, the hearing officer in the matter, had an intimate
personal relationship with Arsenault, the complaining officer in

the disciplinary matter.  Accordingly, I find that Miner has
sufficiently alleged the deprivation of procedural due process by
Lafond to allow this claim to proceed against him.  Miner has
not, however, alleged Arsenault behaved improperly with regard to
the disciplinary charge or any of the other claims raised in
Miner's complaint, and I therefore recommend that Arsenault be
dismissed from this action.

     E.   Unreasonable Strip Search

Miner claims that his right to be free from unreasonable
searches, as guaranteed by the Fourth Amendment, was violated by
the strip search to which he was subjected on June 16, 2006.
Prison inmates do not shed all fundamental protections of the
Constitution upon incarceration, but retain those rights that are
not inconsistent with their prisoner status or with the
legitimate penological objectives of the corrections system.
Wolff, 418 U.S. at 555.  Regarding strip searches, pretrial
detainees retain their Fourth Amendment right to be protected
from unreasonable searches during their incarceration.  Bell v.
Wolfish, 441 U.S. 520, 545 (1979).  "However, those rights may be
subject to restrictions and limitations based on the fact of
confinement, the legitimate goals and policies of the penal

institution, and the need of the institution to maintain security
and internal order."  Roberts v. Rhode Island, 239 F.3d 107, 110
(1st Cir. 2001); Bell, 441 U.S. at 545-46.  "'When an
institutional restriction infringes a specific constitutional
guarantee,'--here, the Fourth Amendment right against
unreasonable searches,--'the practice must be evaluated in the
light of the central objective of prison administration,
safeguarding institutional security.'" Roberts, 239 F.3d at 110;
quoting Bell, 442 U.S. at 546.  In Bell, the Supreme Court
instructed lower courts examining prison strip searches to
"consider the scope of the particular intrusion, the manner in
which it is conducted, the justification for initiating it, and
the place in which it is conducted."  441 U.S. at 559.  The First
Circuit has held that in the context of prisoners held in local
jails for minor offenses[7], "the Bell balance requires officers to
have a reasonable suspicion that a particular detainee harbors
contraband prior to conducting a strip or visual body cavity
search."  Roberts, 239 F.3d at 110, (citing Swain v. Spinney, 117
F.3d 1, 5 (1st Cir. 1997)).

---

[7]The complaint does not reveal the offense for which Miner
is incarcerated, although his transfer to the New Hampshire State
Prison suggests that it was a felony.

Applying the Bell balancing factors, I find that Miner's complaint sufficiently alleges the minimal facts necessary to find that the strip search conducted on June 16 was unreasonable. The search does not appear to be based on a particularized suspicion that Miner was in possession of contraband, as Miner states that he was strip searched nine hours before, and had been locked in his cell without access to any contraband in between the searches. Further, Miner alleges that he was subjected to a full body strip search, for which he had to crawl outside of his cell because he was denied the use of a cane. Miner has, therefore, successfully stated a claim against Reed for a violation of his Fourth Amendment right to be free from unreasonable searches and I will direct, in the Order issued simultaneously with this Report and Recommendation, that this claim be served on Reed.

F.   Retaliation

Miner claims that Libby was responsible for his housing in punitive segregation until the time of his transfer to the New Hampshire State Prison. Miner's sole factual assertion supporting this claim, however, is that Libby told Miner that he was aware of a prior lawsuit Miner had filed against someone

18

else, because Libby was working for the defendant in that suit at that time.  The allegations set forth by Miner are insufficient to allow this Court to infer any retaliatory intent at all, or even to suggest some motivation on Libby's part to retaliate against Miner, in Miner's continued placement in punitive segregation.  Accordingly, I recommend that this claim be dismissed from this action.

3.    Theories of Defendant Liability

      A.    Individual Liability

42 U.S.C. § 1983 authorizes suits against state actors operating to deprive citizens of their constitutional rights.[8] Because I have found that Miner has alleged constitutional violations against GCDC employees Lafond, Dunn, Reed, and Libby sufficient to state a cause of action under § 1983, those

---

[8]The statute provides in relevant part:

> Every person who, under color of any [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to that party injured in any action at law, . . .

42 U.S.C. § 1983.

individuals are proper defendants in this suit in their
individual capacities.

B.  <u>Municipal Liability</u>

Miner has named the Grafton County Commissioners to this
action.  This is another way of suing Grafton County.  Under New
Hampshire law, counties, such as Grafton County, are considered
local governmental units.  <u>See</u> N.H. Rev. Stat. Ann. ("RSA") 507–
B:1 (1997) (defining "governmental unit" as "any political
subdivision within the state including any county, city, town . .
., but [not including] the state or any department or agency
thereof."); <u>see also</u> RSA 23:1 (1988) (providing that "each county
is a body corporate for the purpose of being sued. . ."").
Municipalities and local government entities are "persons" within
the meaning of § 1983.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436
U.S. 658, 690 (1978).  In order to maintain a claim against
Grafton County under 42 U.S.C. § 1983, however, the claim must be
grounded upon an unconstitutional municipal custom or practice
and two requirements must be met.  "First, the custom or practice
must be attributable to the municipality, i.e., it must be 'so
well settled and widespread that the policymaking officials of
the municipality can be said to have either actual or

constructive knowledge of it yet did nothing to end the
practice.'"  Miller v. Kennebec County, 219 F.3d 8, 12 (1st Cir.
2000) (quoting Bordano v. Mcleod, 871 F.2d 1151, 1156 (1st Cir
1989)).  Second, the custom must have been the cause of and "the
moving force" behind the deprivation of constitutional rights.
Miller, 219 F.3d at 12.  Because he has at this time failed to
allege that Grafton County engaged in a custom or policy of
allowing or enabling unconstitutional treatment of prisoners,
Miner fails to state a § 1983 claim against the Grafton County
Commissioners.  Accordingly, I recommend that the Grafton County
Commissioners be dismissed as defendants to this action, without
prejudice to Miner's ability to renew this claim if he is able to
allege additional facts that would subject Grafton County to
liability for this action.

     C.   Supervisory Liability

Miner has named Libby in his capacity as the GCDC
Superintendent as a defendant to this suit.  Because he does not
allege that Libby was present at or directly involved in the
incidents alleged, I assume that Miner intends to sue Libby in
his supervisory capacity at the GCDC.  "Supervisory liability
under § 1983 cannot be predicated on a *respondeat* theory, but

only on the basis of the supervisor's own acts or omissions."
Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998)
(internal citations omitted).  A supervisor must be "either a
primary actor involved in, or a prime mover behind, the
underlying violation."  Camilo-Robles v. Zapata, 175 F.3d 41, 43-
44 (1st Cir. 1999).  There must be "an affirmative link, whether
through direct participation or through conduct that amounts to
condonation or tacit authorization" to the violation alleged.
Id. at 44.  Here, Miner's claims suffice to allege that the
violations and behavior he complains of were committed with at
least the condonation or tacit authorization of Libby because
Miner alleges that he met with Libby to discuss the problems on
several occasions, and yet Libby took no action to assist him in
resolving the constitutional issues presented here.  For purposes
of preliminary review, I find that Miner's complaint states the
minimum facts necessary to allege that Libby was aware of the
conduct of the officers at GCDC and the conditions present in the
punitive and administrative segregation unit, but refused to
correct them.  I find therefore that Miner has sufficiently
stated a claim against Libby in his supervisory capacity to allow
this action to proceed against him.

22

4.   Motion for Appointed Counsel

Miner has requested that this Court appoint counsel to represent him in this case.  There is no absolute constitutional right to free legal representation in a civil case.  Bemis v. Kelley, 857 F.2d 14, 15 (1st Cir. 1988).  Rather, appointment of counsel in a civil case is left to the discretion of the court. See 28 U.S.C. § 1915(d).  An indigent litigant must demonstrate that exceptional circumstances exist to justify appointment of counsel, such that without counsel the litigant most likely would be unable to obtain due process of the law.  DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991); Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986) (per curiam).

At this time, plaintiff has failed to establish the existence of any exceptional circumstances that would endanger his ability to obtain due process of law in this matter.  The plaintiff's motion for counsel is therefore denied without prejudice to refiling in the future should circumstances warrant.

## Conclusion

In an Order issued simultaneously with this Report and Recommendation, I direct that the ADA, Equal Protection, conditions of confinement, deficiency in disciplinary hearing due

process, and unreasonable strip search claims be served against defendants Libby, Lafond, Reed and Dunn.  I recommend that the retaliation claim and defendants Arsenault and the Grafton County Commissioners be dismissed from this action for the reasons discussed herein.  <u>See</u> U.S.C. § 1915A(b)(1).

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauth. Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:      November 8, 2006

cc:        Stephen Miner, pro se

24